238 P.3d 129

Ryan JACOBSEN, Petitioner,

v.

The Honorable Thomas LINDBERG, Judge of the Superior Court of the State of Arizona, in and for the County of Yavapai, Respondent Judge.

State of Arizona, Real Party in Interest.

No. 1 CA–SA 10–0098.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 24, 2010.

Yavapai County Public Defender by Robert K. Gundacker, Deputy Public Defender, Prescott, Attorneys for Petitioner.

Sheila Sullivan Polk, Yavapai County Attorney by Bill R. Hughes, Deputy County Attorney, Prescott, Attorneys for Real Party in Interest.

## OPINION

IRVINE, Judge.

¶ 1 Ryan Jacobsen seeks relief from the trial court's order limiting his invocation of his rights against self-incrimination in a polygraph examination and determining that his

rights are protected by Arizona Revised Statutes ("A.R.S.") section 13–4066. We reiterate our supreme court's previous holding that a waiver of the privilege against self-incrimination may not be made a condition of probation. We also hold that A.R.S. § 13–4066 does not adequately protect a probationer's rights against self-incrimination.

¶ 2 Jacobsen was indicted on several counts of Luring a Minor for Sexual Exploitation. He eventually pled guilty in a plea agreement that included sex offender conditions. Two of those terms are relevant here:

6. Actively participate in sex offender treatment and remain in such treatment at the direction of the probation officer.

7. Submit to any program of psychological or physiological assessment at the direction of the probation officer, including but not limited to Abel/penile plethysmograph testing and/or the polygraph, to assist in treatment, planning and case monitoring.

Pursuant to these provisions, Jacobsen's probation officer directed him to enroll in a sex offender treatment program that included periodic polygraph examinations.

¶ 3 Jacobsen was asked to complete several forms before undergoing a polygraph examination. One was a consent to participate which included a waiver of confidentiality that noted his probation officer would be fully informed of his issues and progress. It also noted: "I understand that distressed polygraphs cannot and will not be used in court or for probation revocation or treatment termination." Jacobsen asked his counselor what the consequence would be if he exercised his right against self-incrimination and refused to answer questions in the polygraph and was told that a refusal to answer any question for any reason would constitute a failure of the polygraph.

¶ 4 Jacobsen was also asked to complete a fifteen page questionnaire before taking the polygraph. The questions covered a wide range of topics. Some related to the offenses to which he had pled guilty, but others addressed other potentially illegal activities such as sex acts with or abuse of minors, use of prostitutes, stealing property, and secretly photographing others. Other questions addressed legal, non-deviant sex acts.

¶ 5 Eventually, Jacobsen filed a Motion to Preclude Polygraph Examination and Pre-Polygraph Questionnaire, arguing that requiring him to answer all the questions violated his rights under the Fifth Amendment to the United States Constitution. The trial court initially responded by issuing an order "granting Defendant immunity according to A.R.S. § 13–4066." Jacobsen filed an additional pleading questioning the court's authority to give him immunity and arguing that the protections of A.R.S. § 13–4066 were not broad enough to protect his Fifth Amendment rights. After further argument, the trial court ruled that A.R.S. § 13–4066 provides a probationer with adequate Fifth Amendment protection as to information or statements elicited during sex offender treatment. Specifically, the court stated:

The Court finds that the Defendant has not consented, absent the Order of the Court, to answer the questions as a matter of fact in this case, except the statement or evidence may be used pursuant to Rule 404 B and C. In connection with questions that may be asked in the course of probation services, plethysmograph, or polygraph, the Court believes that the Defendant has a right to invoke Fifth Amendment privilege if to answer the question would possibly incriminate him with regard to statements that are made pertaining to activities that have or may have occurred subsequent to being placed on probation and undergoing the treatment that was prescribed by the Plea Agreement and the Court's probation terms mandated by that agreement. The Court believes that a person, without violating terms of the Plea Agreement or the probation terms, can invoke the Fifth Amendment rights with regard to those areas that are not protected, which would be the areas covered by A.R.S. § 13–4066(B). The Court believes that A.R.S. § 13–4066(B) provides protection commensurate with the Defendant's Fifth Amendment rights and that he is required to answer those questions so that treatment can occur and rehabilitation services can be provided and directed at the kind of issues

that may have occurred in a particular person's history. The Court believes that the Defendant is protected in terms of the subsequent use of the information pertaining to this case or preceding cases, by the protections provided by A.R.S. § 13–4066. The Court believes that the Defendant may, without violating the conditions of his probation, invoke the Fifth Amendment with regard to questions that concern what may have occurred after the point in time where he started undergoing treatment and after the time when he was put on probation.

The trial court granted a stay of the polygraph while Jacobsen sought relief from this court.

¶ 6 The interplay between the right against self-incrimination and the requirement that a probationer undergo a polygraph examination is not an issue of first impression. In *State v. Eccles*, which also involved a probationer required to take a polygraph, our supreme court stated that "the state cannot make waiver of the privilege against self-incrimination a condition of probation." 179 Ariz. 226, 227, 877 P.2d 799, 800 (1994) (citing *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984)). The court explained:

> The state may not force defendant to choose between incriminating himself and losing his probationary status by remaining silent. The fact that defendant has not yet been presented with the dilemma of either incriminating himself or jeopardizing his probation does not affect our decision. The Supreme Court has held that "the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment."

The condition of probation that requires defendant to waive his Fifth Amendment rights is unconstitutional and must be removed from the terms of his probation. The condition thus sanitized would read: as a "critical part of the Sexual Offender Treatment Program," defendant must agree to "answer [ ] truthfully, any questions [asked by] the probation officer, counselors, polygraph examiners, or any other agent of the Probation Department's treatment programs." Like the condition at issue in *Murphy*, this sanitized condition would merely proscribe false statements and require defendant to respond to questions that could not incriminate him in future criminal proceedings; it would not prohibit him from validly asserting the privilege against self-incrimination and would not penalize him for so doing.

The state correctly concedes that defendant's probation cannot be revoked for a *valid* assertion of the privilege against self-incrimination. We emphasize the word valid. Defendant must truthfully answer all questions that could not incriminate him in future criminal proceedings. To the extent he has lost the privilege on offenses for which he has been convicted, he must answer, even if his answers may be evidence of probation violations and result in revocation. Furthermore, we do not hold that defendant may not incriminate himself; to avoid doing so, he must assert the privilege at the appropriate time. Without the impermissible condition of probation, defendant is free to claim the privilege and must do so if he desires not to incriminate himself.

We recognize that by asserting the privilege, defendant may be refusing to disclose conduct which constitutes both a probation violation and a new criminal offense. The Supreme Court addressed this concern in a footnote in *Murphy* and stated that "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." *Murphy*, 465 U.S. at 436 n. 7, 104 S.Ct. at 1147 n. 7. Thus, the state may compel answers to incriminating questions only if it offers the probationer use immunity. *See id.* at 439, 104 S.Ct. at 1148 ("We have not been advised of any case in which Minnesota has attempted to revoke probation merely because a probationer refused to make nonimmunized disclosures. . . .").

*Eccles,* 179 Ariz. at 228–29, 877 P.2d at 801–02 (internal citation and footnote omitted). We conclude that this analysis applies here. The State cannot require Jacobsen to waive his Fifth Amendment rights as a condition of probation and cannot require him to answer questions that could incriminate him in future proceedings. Nor must Jacobsen wait to have his probation revoked before he can seek relief from the trial court's order compelling him to take the exam.

¶ 7 The State argues that *Eccles* is distinguishable because in that case the written plea agreement did not specifically provide for a waiver of the right against self-incrimination. In *Eccles,* the trial judge orally told the defendant he must waive his rights. Here the specific term in the Plea Agreement required polygraph examinations, so, the State argues, Jacobsen gave up his rights against self-incrimination. We disagree.

¶ 8 Nothing in *Eccles* makes its ruling hinge on the oral nature of the probation term. Nor, as the supreme court explained, does agreeing to take polygraph examinations automatically waive the privilege against self-incrimination. The polygraph examination may explore a defendant's background and actions that are not incriminatory, or a defendant may choose not to exercise his full rights. In either case, the polygraph may still be given. *Eccles* clearly holds that a waiver of the right against self-incrimination may not be required as a condition of probation, except for the crime at issue in the plea agreement. 179 Ariz. at 229, 877 P.2d at 802 ("We cannot harmonize a constitutional rule forbidding a requirement that a probationer waive his privilege against self-incrimination with a holding that a probationer nevertheless waives the illegality by not expressly rejecting the forbidden condition and opting for additional imprisonment."). This holding applies here and Jacobsen may assert his right against self-incrimination as detailed by the supreme court in *Eccles.*

¶ 9 The State also argues that this case is different from *Eccles* because A.R.S.

§ 13–4066 (2010)[1] adequately protects Jacobsen's rights. That statute was not enacted until after *Eccles* was decided, so it was not at issue in that case. The statute provides:

A. Any statement that is made by a person who undergoes sex offender treatment that is ordered by the court or that is provided by the state department of corrections or the department of juvenile corrections to a person who is convicted of an offense listed in chapter 14 or 35.1 of this title and any evidence that results from that treatment is not admissible against the person in any criminal or juvenile delinquency proceeding unless the person consents, except that the statement or evidence may be used pursuant to rule 404(b) and (c), Arizona rules of evidence.

B. This section does not apply if there is a reasonable belief that the person has committed a new violation of chapter 14 or 35.1 of this title during the course of the person's treatment. A treatment provider who complies with this subsection does not violate any privilege established by law.

A.R.S. § 13–4066. Jacobsen responds that this statute is not adequate to protect his rights against self-incrimination because it does not provide adequate immunity and, in any event, it allows incriminatory statements to be used against him. We agree.

¶ 10 We need not determine the exact scope of the protections provided by A.R.S. § 13–4066. For purposes of this decision, it is sufficient to hold that it is not broad enough to provide the immunity that is required to force a defendant invoking his rights against self-incrimination to speak. As noted in *Eccles,* a probationer can only be compelled to answer incriminating questions if the probationer is offered use immunity. *Eccles,* 179 Ariz. at 229, 877 P.2d at 802.

¶ 11 The State has declined to offer Jacobsen immunity under the general immunity statute, A.R.S. § 13–4064 (2010). That statute provides that "any information directly or indirectly derived from such testimony or evidence, shall not be used against the

---

1. We cite the current version of the applicable statute because no revisions material to this decision have since occurred.

person in any proceeding or prosecution for a crime or offense concerning which he gave answer or produced evidence under court order." Arizona Revised Statutes § 13–4066 is plainly not as broad. As Jacobsen notes, to be effective, "a grant of immunity is valid only if it is coextensive with the scope of the privilege against self-incrimination." *Murphy v. Waterfront Comm'n of New York Harbor,* 378 U.S. 52, 54, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Section 13–4064 appears to lay out a procedure for the prosecution to offer court-approved immunity that will satisfy the requirements of the Fifth Amendment. Section 13–4066 does not. It only applies to the statements made by the person, not information indirectly derived from those statements. Nor does it include sufficient detail as to the limits, if any, on the prosecution's use of statements. Consequently, A.R.S. § 13–4066 does not provide immunity coextensive with the privilege against self-incrimination.[2]

¶ 12 Section 13–4066 also specifically allows a probationer's statements to be used pursuant to Rule 404(b) and (c) of the Arizona Rules of Evidence. With regard to 404(c), such evidence may be admitted "if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Rule 404(c); *see also State v. Aguilar,* 209 Ariz. 40, 97 P.3d 865 (2004). Thus, if compelled to answer questions about prior sexual acts, a defendant is being compelled to provide evidence that may be used against him. Indeed, it is simple to envision a situation in which the polygraph answers provide prosecutors with indirect information of new offenses that are not covered by A.R.S. § 13–4066, those crimes are charged, and then the defendant's actual statements are used as Rule 404(c) evidence to show a propensity to commit the charged offense. We do not believe the Fifth Amendment allows such compulsion.

¶ 13 We conclude that the trial court erred in ruling that A.R.S. § 13–4066 adequately

protected Jacobsen's rights against self-incrimination. Jacobsen may assert the privilege against self-incrimination as to polygraph questions that may incriminate him. The trial court should apply the guidelines set out by the supreme court in *Eccles* in determining which questions are properly objectionable. Therefore, we accept jurisdiction of the petition for special action and grant relief.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and PHILIP HALL, Judge.

---

2. Jacobsen also argues the statute does not adequately protect against prosecution for out-of-state offenses. Because we conclude that A.R.S. § 13–4066 does not prevent the assertion of the right against self-incrimination even for in-state

offenses, we need not address that question. Whether a grant of use immunity in Arizona protects against out-of-state or federal use of evidence obtained by the grant of immunity is not at issue in this case.